**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

|  |  |  |
|---|---|---|
| JCC TRANSPORT, LLC and CBP AIR LOGISTICS, LLC, individually and on behalf of those similarly situated, | ) ) ) ) ) | Case No. 25-2514-HLT-GEB |
| Plaintiffs, | ) ) ) |  |
| v. | ) ) |  |
| TEXTRON AVIATION, INC., | ) ) |  |
| Defendant. | ) |  |

## ORDER FOR DISCOVERY OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

### A.  PURPOSE

The Parties, by and through their counsel, agree to this Joint Protocol for Discovery of Electronically Stored Information (ESI) pursuant to Federal Rules of Civil Procedure 16, 26, 33, 34, and 37, Local Rules of the United States District Court for the District of Kansas, and the Court's "Guidelines for Cases Involving Electronically Stored Information" (July 18, 2013). This Protocol is designed to govern the identification, preservation, collection, processing, review, and production of ESI in this action.

### B.  COOPERATION

The Plaintiffs and Defendant Textron Aviation, Inc. ("the Parties") are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the Action consistent with the Federal Rules and this Court's Standing Order Regarding Civil Litigation. The Parties will meet and confer within a reasonable time to resolve disputes arising under this ESI Order.

## C. DEFINITIONS

i.  "Action" means the above-captioned lawsuit: JCC Transport LLC et al v. Textron Aviation, Inc., Case No. 2:25-cv-02514-JTM-GEB (D. Kan.).

ii.  "AI Tool" means a machine-based system that is designed to operate with varying levels of autonomy and that may exhibit adaptiveness after deployment, and that, for explicit or implicit objectives, infers, from the input it receives, how to generate outputs such as predictions, content, recommendations, or decisions that can influence physical or virtual environments. "AI Tool" includes techniques and technologies such as machine learning, natural language processing, and large language models (e.g., ChatGPT, Claude, Google Bard). Expressly excluded from this definition of "AI Tool" are: default word processing and plug-in spelling and grammar checks (e.g., Editor in Word, Grammarly), citation formatting, document comparison (e.g., Compare function in Word/Adobe), basic search functions, file conversion, and OCR.

iii.  "Confidentiality Designation" means the legend affixed to "Confidential" or "Highly Confidential" Discovery Material as defined by, and subject to, the terms of the Stipulated Protective Order.

iv.  "Discovery Material(s)" is defined as all information produced, given, or exchanged by and among all Parties, or received from non-parties in the Litigation, including all deposition testimony, testimony given at hearings or other proceedings, interrogatory answers, documents and all other discovery materials, whether produced informally or in response to requests for discovery.

v.  "Electronically stored information" or "ESI," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

vi.  "Hard-Copy Document" means Documents existing in paper form at the time of

collection.

vii.    "Metadata" refers to application and system information of a file that contains data about the file, as opposed to describing the content of a file, as the term is described and used in "The Sedona Conference Glossary: EDiscovery and Digital Information Management," Fifth Ed., February 2020.

viii.    "Native" or "Native Format" means and refers to an electronic document's associated file structure defined by the original creating application. For example, the native format of an Excel workbook is a .xls or .xslx file.

ix.    "Non-Party" or "Non-Parties" means any natural person, corporation, association, or other legal entity not named as a Party to this Action.

x.    "Party" means any party to this Action.

xi.     "Producing Party" means the Party or Non-Party that may be producing documents in response to the request of Requesting Party.

xii.     "Receiving Party" means a Party that received Discovery Materials from a Producing Party during the course of this Action.

xiii.     "Requesting Party" means the Party that requests Discovery Materials from a Producing Party through a discovery request, subpoena, or other means.

D. **GENERAL PROVISIONS**

i.    Nothing in this ESI Protocol shall be construed to affect the admissibility of discoverable information. All objections to the admissibility of any documents are preserved and may be asserted at any time.

ii.    Pursuant to the terms of this ESI Protocol, information about search processes and ESI practices may be disclosed. However, compliance does not waive any Party's objections to producing specific ESI, including objections based on relevance,

discoverability, admissibility, undue burden, inaccessibility, or privilege. Compliance also does not require disclosing information protected by attorney-client privilege, work product doctrine, or other privileges. All such privileges and protections are preserved, and parties reserve the right to object.

iii.    Nothing in this ESI Protocol expands any Party's discovery obligations beyond those required by the Federal Rules of Civil Procedure, local rules, or court orders. It does not require any Party to:

1.  Collect, review, or produce ESI that is not reasonably accessible;

2.  Restore or search backup tapes, disaster recovery systems, or other media not used in the ordinary course of business;

3.  Incur unreasonable costs or undue burdens in responding to discovery requests.

iv.    The Parties agree to use reasonable, good faith and proportional efforts to preserve, identify, and produce relevant and discoverable information consistent with Fed. R. Civ. P. 26(b)(1) and 37(e).

v.    The Parties agree to cooperate in good faith to establish appropriate parameters for discovery, including reasonable limits on the number of custodians, identification of relevant non-custodial data sources (e.g., shared drives, databases, or repositories), subject matter scope, and applicable time periods. All discovery shall be conducted consistent with the principles of proportionality set forth in Federal Rule of Civil Procedure 26(b)(1). The Parties shall endeavor to ensure that discovery requests and productions are limited to information relevant to the claims and defenses in this action and proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the Parties' relative access to relevant information,

resources, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

vi.     Consistent with Local Rules, the Parties will attempt to resolve disputes in person, in writing (including email), or by telephone before filing a motion with the Court seeking relief.  If a good-faith effort fails to resolve the dispute, the Parties may seek Court intervention in accordance with the Court's procedures.

vii.    Nothing herein constitutes an admission by any Party that any specific category of discovery is appropriate or that producible ESI exists in this matter.

viii.   This Protocol and any Party's agreement to it do not waive any jurisdictional defenses, affirmative defenses under Rule 8 or Rule 12(b) of the Federal Rules of Civil Procedure, or any other statutory or common law defenses available to Defendant.

E.  **PRESERVATION**

The Parties acknowledge their obligation under Rule 37(e) of the Federal Rules of Civil Procedure and related case law to take reasonable and proportional steps to preserve discoverable information in their possession, custody, or control. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that:

i.      The Parties will meet and confer regarding any data sources that a Producing Party asserts are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B); and

ii.     The following categories of ESI are not discoverable and need not be retained, processed, reviewed, or produced, except upon a showing of good cause:

1.  Deleted, slack, fragmented, or other data only accessible by forensics;

2.  Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system;

3.  Online access data such as temporary internet files, history, cache, and cookies;

4.  Public websites;

5.  Operating system files, executable files, server, system, or network logs;

6.  Interim automatically saved drafts, as opposed to drafts saved by a user;

7.  Data in metadata fields frequently updated automatically, such as last opened date;

8.  Backup and archive data that are substantially duplicative of more accessible data;

9.  Data remaining from systems no longer in use that is unintelligible on the systems in use;

10. Data from personal information management applications (such as Microsoft Outlook) (*e.g.*, email, calendars, contact data, and notes) sent to or from personal mobile devices of custodians (*e.g.*, iPhone, iPad, or Android, and devices), provided that a copy of all such electronic data is saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage); or

11. Other forms of ESI agreed upon between the Parties whose preservation requires extraordinary affirmative measures not utilized in the ordinary course of business.

## F.  ESI DISCOVERY PROCEDURES

i.  **The Parties' Search Obligations**. Consistent with this protocol, the Parties shall conduct reasonable searches across data sources identified through a reasonable investigation as likely to contain potentially responsive information.

ii.  **Disclosure of Data Sources**. Any Party served with discovery shall disclose its custodial and non-custodial sources it intends to search for potentially relevant data

within twenty-one (21) days of service. The custodian information disclosure shall include job title or position. The non-custodial source information disclosure shall include system name. The Parties may meet and confer to discuss the custodial or non-custodial sources and to try to agree on reasonable scope of discovery.

iii.  **Search Procedure**. The Parties shall meet and confer in good faith to agree on search terms, search strings, file type and date restrictions, data sources, and other computer- or technology-aided search methodologies, before undertaking any such efforts.

1. A Producing Party shall identify those search terms it reasonably believes will lead to documents responsive to another Party's Requests for Production of Documents within twenty-one (21) calendar days of serving response and objections. If the Requesting Party reasonably believes the proposed search methods and terms may result in deficiencies, it shall propose written modifications within ten (10) calendar days of the initial exchange of search terms. The Producing and Requesting Parties will then confer in good faith to agree on any alternative or additional search terms. If the Producing Party objects to the revised terms as unduly burdensome or overbroad, the Requesting Party may request a "search term hit report" for the proposed terms. If no agreement is reached, the Requesting Party may seek relief from the Court within thirty (30) days, pursuant to Local Rule 37.1(c).

iv.  **Technology Assisted Review ("TAR")**. The Parties may use technology-assisted review ("TAR"), continuous active learning, or similar analytics to prioritize documents for linear review. However, no Party may employ TAR without first disclosing its intention to do so to the other Parties. If a Party elects to use TAR for any

purpose—including to prioritize documents for review, to cull documents, or to otherwise limit the volume of unstructured ESI subject to linear review—that Party shall provide advance notice and the Parties shall meet and confer in good faith regarding the proposed TAR workflow.

v.    **Use of Artificial Intelligence Tools**. Protected Material shall not be submitted to any Generative AI tool that is generally available to the public or that trains upon or otherwise retains information submitted to it. In addition:

**1.** Any Receiving Party that wishes to use an AI Tool in connection with a Producing Party's Confidential Information must — prior to such use — provide written notice of its intent to use that AI Tool to the Disclosing Party and simultaneously disclose the name, model and version (or date/versioning scheme) of the AI Tool.

**2.** In connection with the use of an AI Tool with Confidential Information, the Receiving Party must ensure the following:

**(i)** the AI Tool is used in a secure environment;

**(ii)** the Confidential Information is not used to train or improve any AI Tool except an AI Tool that will be exclusively used within this Action and, to the extent the AI Tool is trained or improved using Confidential Information, is destroyed at the conclusion of the Action, and is not made accessible to users other than those authorized personnel otherwise allowed to have access to the Disclosing Party's Confidential Information pursuant to the terms of this Order, and then such access shall be solely for purposes of this Action; and

**(iii)** the Receiving Party can and does delete all Confidential Information

from the AI Tool at the conclusion of this Action.

**vi.** **Review of Documents**. Nothing in this stipulation prevents a Producing Party from reviewing documents identified by search terms or other methods for responsiveness, privilege, and confidentiality.

## G. <u>PRODUCTION FORMATS</u>

**i.** **Format**: Unless otherwise agreed, ESI shall be produced as follows:

1. Email and attachments: Single-page, black-and-white, TIFF Group IV, 300 DPI TIFF images with extracted text and metadata

2. Spreadsheets (e.g. Excel): Native format

3. Media files (e.g. audio and video files): Native format

4. Other documents: Single-page, black-and-white, TIFF Group IV, 300 DPI TIFF images with extracted text and metadata Documents with color will be produced in color only if color is needed to understand the meaning

**ii.** **Production of Hardcopy  Documents.**

1. <u>Format</u>: Absent objection, hard copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e*., .dat).

2. <u>Appearance</u>: Each document's electronic image shall  convey  the same information and image as the original document except for Bates numbers, any confidentiality designation(s), and redactions. When printed, copied, or otherwise reproduced, such files shall appear with any such redactions, revisions, and/or comments visible on the face of the file.

3. <u>Unitization</u>: If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be produced as it

existed in the original file of the Producing Party.

4. OCR: Hardcopy documents shall be run through optical character recognition ("OCR") software, and the full text shall be provided on a document-level in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document. Text files should be provided in a "Text" folder.  To the extent that a document is redacted, the text files should not contain the text of the redacted portions. Each Party shall make a good faith attempt to maximize the text quality of the production through use of settings in the OCR software available to that party (or party's vendor).

5. Metadata: The database load file for Paper / Hardcopy Documents should contain metadata fields as listed in **Schedule A**.

6. Data Load Files: Hardcopy Documents should be provided with an Opticon Cross-Reference File and Concordance data load file using standard Concordance delimiters:

(i)     Field Separator: ASCII character 20 ("¶");

(ii)    Quote: ASCII character 254 ("þ");

(iii)   New Line: ASCII character 174 ("®") or <CR><LF> (13,10); and

(iv)    Concordance-compatible image and data load files should be provided in a "Data" folder.

iii.    **Production of Electronically Stored Information.**

1. If a Requesting Party in good faith believes that the production of ESI documents or categories of documents in color is necessary for any ESI documents or categories of documents produced in the first instance in black-

and-white, the Requesting and Producing Parties shall meet and confer as to the appropriateness regarding the number, types, and format of additional documents to be produced in color, if any.

2. <u>Unitization</u>: If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original file of the Producing Party.

3. <u>Exception Files</u>: The Parties need not produce files that cannot be produced or imaged due to technical difficulties. Common exception files include, without limitation, corrupted files, password protected files that cannot be accessed after a reasonable attempt to locate or crack the password, digital rights management, or proprietary software associated with the file. To the extent that potentially relevant ESI cannot be reviewed because proprietary software is necessary to view the ESI will be disclosed to a Requesting Party, and the Parties shall meet and confer regarding the next steps, if any, with respect to such ESI.

4. <u>Compressed File Types:</u> Compressed file types (*i.e.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

5. <u>De-Duplication</u>: Parties may de-duplicate their ESI production globally across custodial and non-custodial data sources. Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level). Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. The initial custodian of a document and any

subsequent custodians of deduplicated copies of the document must be provided in the "All Custodians" metadata field, and the location of each duplicate file provided in the "All FilePath" field

6. Email Threading. Each Party, at its discretion, may use industry standard best practices and analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. With respect to an e-mail chain, the Parties are permitted to produce the longest unique or most inclusive chain from lesser emails and the Parties do not need to separately produce the lesser-included e-mails unless those lesser-included e-mails either (a) include unique attachments not included in the longest chain, or (b) contain a BCC recipient not shown in the longest unique chain. If a lesser-included e-mail includes a unique attachment, then the lesser-included e-mail must be separately produced with the attachment. A most inclusive email thread is one that contains all of the prior or lesser-inclusive emails, including attachments, for that branch of the email thread.

7. Track Changes, Comments, and Similar Data: To the extent that a document or ESI contains tracked changes or comments, the document or ESI should be imaged showing tracked changes and comments, except where redacted for privilege. The tracked changes and comments shall also be produced in the accompanying text file. Presentation files, if processed to TIFF format for purposes of applying redactions, shall be produced showing hidden slides and speakers' notes, or if they contain non-privileged comments, may be produced

in Native Format.  Except in the case of a redaction, the hidden slides and speakers' notes shall also be produced in the accompanying text file.

8.  Parent-child relationships: Parent-child relationships (association between an attachment and its parent document) shall be preserved. The attachment(s) shall be produced adjacent to the parent document, in terms of Bates numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment.

9.  Hyperlinked Files: A Producing Party shall use reasonable efforts to collect, review, and produce relevant documents referenced via hyperlinks contained within emails or other Unstructured Data consistent with their technological capabilities. The parties will meet and confer should any party reasonably believe that a hyperlinked document merits additional investigation, consistent with the governing principles of reasonableness and proportionality.

10. Metadata: The Parties will produce extracted metadata for each document in the form of an industry standard Concordance .DAT file and will include the fields shown in **Schedule A**. The Producing Party has no obligation or duty to create or populate metadata fields that do not exist in the original file or that are not generated as part of the standard scanning process.  For scanned documents, any obligation to provide "objective metadata" is limited to vendor-created information (e.g., document ID, page count, box number) and does not extend to metadata or coding created by counsel during review. For each document, the Producing Party shall produce a line in the index file with the fields and

naming conventions as described in **Schedule A** unless otherwise agreed. If specific fields cannot be provided for a particular document because, *e.g.*, the field is unavailable or contains privileged information the field(s) may be left blank.

iv. **Production of Native Files**

1. Where native files are produced in lieu of TIFF images, each native file will be assigned a unique Bates number. The Producing Party will produce a placeholder (a single-page TIFF slip sheet indicating that the native item was produced) along with the file itself in Native Format. The placeholder will be branded with the Bates number and production number in the lower right-hand corner and the phrase "PRODUCED IN NATIVE ONLY" branded in the center of the page. The Producing Party will also brand any confidentiality or similar endorsements in the lower left-hand corner of the placeholder.

2. Spreadsheets may be redacted with industry standard native redaction tools.

v. **Production from Databases.**

1. To the extent a response to discovery requires production of potentially relevant ESI contained in a structured database, the Producing Party shall determine whether existing report formats or exportable data formats, usually a .csv file, can be utilized. If potentially relevant data can be produced in an already existing and reasonably available report, the Producing Party may collect and produce the data in that report format. The Receiving Party may make reasonable and proportional requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to

request specific data from identified fields.

**vi.    Replacement or Repair Productions.**

1. Any  replacement or repair  production, or specific document being replaced, will  be transmitted with a cover letter or email to identify the production as a replacement and cross-reference the Bates Numbers of the documents being replaced.  If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production."

## H.  PRODUCTION MEDIA

A  Producing  Party  shall  produce  documents electronically, *i.e.*, FTP or Share File, or on encrypted electronic media. The Producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with serving the encrypted media.

## I.  BATES NUMBERING

Each page of a produced document – except native files – shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the  image at a location that does not unreasonably  obliterate, conceal, or interfere with  any  information from the source document. The Producing Party will use a consistent prefix throughout the matter unless good reason exists for using a different prefix. Each document image file will be named with a unique Bates Number. When a text-searchable image file is produced, the Producing Party must preserve the integrity of the underlying ESI.  If a Bates number or set of Bates numbers is skipped, the skipped number, or set of numbers, should be noted with a placeholder (a single-page TIFF slip sheet) in the produced collection.  Any attachments to documents assigned Bates numbers shall be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.  No

other legend or stamp will be placed on the document image other than a confidentiality designation (where applicable), redactions and the Bates Number identified above.

## J.  CONFIDENTIALITY DESIGNATION

The confidentiality designation shall be "burned" onto a document's image in a way that does not unreasonably obscure any information from the source document. For documents produced in native format with image placeholders, the placeholder should be branded with the appropriate confidentiality designation to the extent possible.

## K.  PRIVILEGE LOG

i.  **Production of Privilege Log.** Consistent with the requirements of the Federal Rules of Civil Procedure, the Parties agree to serve a privilege log providing information regarding all ESI and documents withheld from production pursuant to a claim of privilege, work-product, or any other protection of immunity. The Parties agree to employ good faith best efforts to serve the log as promptly as possible following the substantial completion of document production, and at reasonable intervals thereafter to coincide with key procedural events such as deposition schedules. The Parties agree that privilege logs shall be produced in Excel format. Each privilege log shall include the entries of all prior privilege logs, such that each subsequent privilege log supersedes previous logs. To the extent any previous designations are subsequently modified or withdrawn since the prior log, they shall be so noted in any subsequent log to ensure clarity. The Parties agree to meet and confer regarding the deadline for any supplemental privilege logs that are necessary.

ii.  **Format of Privilege Logs.** Each Party's privilege log needs only to provide objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information) and a description of the privilege or protection being asserted

(*e.g.*, attorney-client communication; work product). Attorneys or legal support personnel shall be indicated through the use of "*" next to the individual's name. For each document withheld for privilege, the Withholding Party's privilege log shall include the following information as applicable to the document types as shown in Schedule A):

1.   A unique identifying number for each logged document (*i.e.*, a privilege log identification number);

2.   Date (using sent date for emails and providing the date created and date last modified for documents);

3.   Document type (msg or similar indication of file type for email)

4.   Custodian(s) or source (the name of the person(s) or non-custodial source from which the document was collected);

5.   Author

6.   From

7.   To

8.   CC

9.   BCC

10.  Subject or Filename (so long as the disclosure would not reveal information itself privileged or protected; if the disclosure would reveal information itself privileged or protected, then the field shall indicate "Privileged")

11.  Basis for the privilege claim (*e.g.*, attorney-client communication, work product); and

12.  For entries where the objective metadata contained in 1-11 does not provide sufficient information for the Receiving Party and the Court to evaluate the assertion of privilege, the Producing Party will provide, in their initial log, a privilege description. For good cause shown, a Receiving Party may request a privilege description for entries where the objective metadata does not provide sufficient information to evaluate the assertion of privilege.

iii.   **Privileged Emails**. For Discovery Materials comprising a chain of privileged e-mails, the Withholding Party need only include one entry for the top/most recent email on the privilege/redaction log for the entire e-mail chain and need not log each e-mail contained in the chain separately. However, this does not relieve the Withholding Party

of the obligation to produce non-privileged responsive emails and attachments lower down the email chain. Discovery Materials comprising a family (email and attachments) may be logged as a single entry so long as the description of that entry includes a reference to the privileged attachments that includes the same set of objective metadata.

iv.  **Exceptions to Logging.** The Parties agree that the following privileged or protected documents need not be included on a privilege log: (i) privileged or work product documents generated on or after June 16, 2025 (the date the complaint was filed in *CBP Air Logistics LLC v. Textron Aviation Inc.*, 6:25-cv-01049 (M.D. Fla.)) involving outside or in-house counsel; or (ii) privileged or work-product documents regarding litigation holds, the preservation, collection, or review of documents in this Action or any other litigation related to the allegations underlying the claims asserted in this Action.

v.  **Redactions.** Documents redacted on the basis of privilege or work-product need not be logged as long as the objective metadata is not redacted. For all redacted documents, the reason for redaction shall be provided. For example, redactions on the basis of the attorney-client privilege or work product protection shall be indicated as follows: "REDACTED – PRIVILEGED." Redactions applied on any other basis shall be indicated as follows: "REDACTED – PII" or "REDACTED – PHI," as appropriate. Any Document to which a redaction is applied shall have the "Redacted" Metadata field populated "Y." For redacted documents where the subject matter is not decipherable as a result of redaction, a description of the document that is sufficient to understand the subject matter of the document shall be provided.

**L.  CHALLENGES TO CLAIMS OF PRIVILEGE**

This stipulation shall not limit a Receiving Party's right to challenge a Withholding Party's claim that information is protected by the attorney-client privilege, work product doctrine, or any other privilege or immunity, on grounds unrelated to the disclosure circumstances.

**M. CLAWBACK PROCEDURE.**

Pursuant to Fed. R. Evid. 502(d), the parties agree, consistent with the terms of the Protective Order in this case, that the inadvertent disclosure of privileged or work-product material shall not constitute a waiver of any applicable privilege in this or any other federal or state proceeding. Upon written notice of such disclosure, the Receiving Party shall promptly return or destroy the identified material and confirm compliance in writing, without prejudice to its right to challenge the privilege designation before the Court. This provision applies equally to third parties producing documents. The parties agree that the requirements of Fed. R. Evid. 502(b) shall not apply, and that this provision shall be interpreted to provide the maximum protection available under Rule 502(d).

**N.  MODIFICATION**

This ESI Protocol may be modified by the stipulation of the Parties or by the Court for good cause shown. However, no Party may seek relief from the Court regarding compliance or modification until it has met and conferred in good faith with any Parties involved in the dispute.

**O.  PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree to meet and confer concerning whether the production of responsive ESI should occur in phases and whether to phase the production of ESI, if appropriate, by prioritizing selected sources and/or custodians.

If productions are made on a rolling basis, privilege logs need only be produced within thirty (30) days after substantial completion of the document production.

**IT IS SO ORDERED.**

Dated March 31, 2026, at Wichita, Kansas.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
U.S. Magistrate Judge

| SCHEDULE A | | | | | |
|---|---|---|---|---|---|
| **Field Name** | **Field Description** | **Field Type** | **Hard Copy** | **E-mail** | **Other ESI** |
| **Begin Bates** | Begin Bates (including prefix) - No spaces or special characters | Text | X | X | X |
| **End Bates** | End Bates (including prefix) - No spaces or special characters | Text | X | X | X |
| **All Custodians** | Identification of all custodians/sources who the producing party agreed to produce and where a duplicate of the Document was de-duplicated when processing the documents. | Text | X | X | X |
| **Custodian** | Custodian(s)/source(s) (*e.g.*, John Doe or ABC Department) | Text | X | X | X |
| **Time Zone** | The Time Zone from which the native file was processed | Text | | X | X |
| **MD5 Hash** | Document MDS hash value (used for de-duplication or other processing) | Text | | X | X |
| **Begin Family** | Start Bates of family range | Text | X | X | X |
| **End Family** | End Bates of family range | Text | X | X | X |
| **Pages** | Page count | Integer | X | X | X |

| SCHEDULE A | | | | | |
|---|---|---|---|---|---|
| **Field Name** | **Field Description** | **Field Type** | **Hard Copy** | **E-mail** | **Other ESI** |
| **Confidentiality** | Confidentiality designation for document | Text | X | X | X |
| **Hidden Content** | Indicates a document has hidden data (Y/N) | Text | | | X |
| **Track Changes** | Indicates a document contains track changes (Y/N) | Text | | | X |
| **Comments** | Indicates a document contains comments (Y/N) | Text | | | X |
| **From** | Author of the e-mail or calendar Item | Text | | X | |
| **To** | Recipients of the e-mail | Multi-Entry | | X | |
| **Cc** | Names of individuals who were copied on the e-mail | Multi-Entry | | X | |
| **Bcc** | Names of individuals who were blind-copied on the e-mail | Multi-Entry | | X | |
| **Subject** | E-mail or calendar subject | Text | | X | |
| **Attachment Count** | Number of attachments to the e-mail | Integer | | X | |
| **Date Created** | Datetime electronic file was created internally. | Datetime | | | X |

| SCHEDULE A | | | | | |
|---|---|---|---|---|---|
| **Field Name** | **Field Description** | **Field Type** | **Hard Copy** | **E-mail** | **Other ESI** |
| | Format: MM/DD/YYYY 00:00 Pm UTC | | | | |
| **Date Modified** | Datetime electronic file was last modified internally. Format: MM/DD/YYYY 00:00 Pm UTC | Datetime | | | X |
| **Date Sent** | Datetime the e-mail was sent. Format: MM/DD/YYYY 00:00 Pm UTC | Datetime | | X | |
| **Importance** | Indicator of the importance (high or low) a sender might place on a message | Text | | X | |
| **Date Received** | Datetime the e-mail was received. Format: MM/DD/YYYY 00:00 Pm UTC | Datetime | | X | |
| **E-mail Conversation Index** | E-mail thread identification | Text | | X | |
| **Date Saved** | Date native file was last modified internally. Format: MM/DD/YYYY | Date | | | X |

| SCHEDULE A | | | | | |
|---|---|---|---|---|---|
| **Field Name** | **Field Description** | **Field Type** | **Hard Copy** | **E-mail** | **Other ESI** |
| **Author** | Author field value extracted from the metadata of a native file) | Text | | | X |
| **Last Modified By** | Identify of last person who modified the document internally from the metadata of a native file | Text | | | X |
| **Text Path** | File path to the text file location on the delivery medium | Text | X | X | X |
| **File Size** | File size in KB | Integer | | X | X |
| **Filename** | File name of native file (e-docs or attachments to e-mail) | Text | | X | X |
| **Application** | Application used to create native file (e.g., Excel, Outlook, Word) | Text | | X | X |
| **File Extension** | File extension of native file | Text | | X | X |
| **NativePath** | File path location to the current native file location on the delivery medium | Text | | | X |
| **Redacted** | Indicates a document contains redactions (Y/N) | Text | X | X | X |

| SCHEDULE A | | | | | |
|---|---|---|---|---|---|
| **Field Name** | **Field Description** | **Field Type** | **Hard Copy** | **E-mail** | **Other ESI** |
| **Producing Party** | Entity from whom documents were collected | Text | X | X | X |
| **Volume #** | Production Volume # | Text | X | X | X |